Steven R. Sumsion (#8317)
Cameron S. Christensen (#16015)
**SUMSION BUSINESS LAW**
3651 N 100 E, Suite 300
Provo, Utah 84604
Tel: (801) 375-2830
Email: steve@businesslawutah.com
　　　　cameron@businesslawutah.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF UTAH

| | |
|---|---|
| **AMMON MCNEFF**, an individual; and **MATTHEW MCNEFF**, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> **DANIEL MCNEFF**, an individual; **LINDSEY THOMPSON**, an individual; **DAVE GIBB**, an individual; **MARTIN EVANS**, an individual; **KATHLEEN EVANS**, an individual; **TAXPRO TAX AND ACCOUNTING**, a Utah limited liability company; **TOM SEILER**, an individual; **SEILER ANDERSON FIFE AND MARSHALL, LC**, a Utah limited liability company; and **JOHN** and **JANE DOES 1-10**, <br><br> Defendants. | **COMPLAINT** <br><br> Case no.: 2:21-cv-00048-DAO <br><br> Judge Daphne A. Oberg |

Plaintiffs Ammon McNeff ("Ammon") and Matthew McNeff ("Matthew") (collectively,

"Plaintiffs"), by and through counsel, hereby complain against Defendants Daniel McNeff

("Dan"), Lindsey Thompson ("Lindsey"), Dave Gibb ("Dave"), Martin Evans ("Martin"),

1

Kathleen Evans ("Kathleen"), TaxPro Tax and Accounting ("TaxPro"), Tom Seiler ("Seiler"), Seiler Anderson Fife and Marshall ("SAFM"), and John and Jane DOES 1-10 (collectively known as "Defendants") as follows:

## NATURE OF THE ACTION

After fifteen (15) months of arbitration demanded by Dan, he was permanently expelled as manager of Legally Mine, and Plaintiffs were awarded $498,854.74 in legal fees. After six (6) days of trial, Plaintiffs discovered that Dan fraudulently obtained a $1.4 Million PPP loan, which he used to pay his personal $300,000 tax levy and his personal legal counsel. When Plaintiffs discovered this additional financial misconduct and the arbitrator released jurisdiction over the matter, Plaintiffs were terminated in retaliation and have been denied read-only access to the company's financials. Dan and Lindsey then filed fraudulent Articles of Conversion for Legally Mine to convert the company from an LLC to a corporation in order to *circumvent* the arbitration award of attorneys' fees and permanent injunction. Dan continues to flout the arbitration award, the Operating Agreement, and his fiduciary duties owed under the LLC Act and federal law, including the retaliatory termination of Plaintiffs in connection with their reporting Dan's tax evasion to the IRS.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Ammon McNeff is a Utah citizen, whose primary place of residency is in Utah.

2. Plaintiff Matthew McNeff is a Utah citizen, whose primary place of residency is in Utah.

3. Defendant Daniel McNeff is a Utah citizen, whose primary place of residency is in Utah.

4. Defendant Lindsey Thompson is a Utah citizen, whose primary place of residency is in Utah.

5. Defendant Tom Seiler is a Utah citizen, whose primary place of residency is in Utah.

6. Defendant Seiler Anderson Fife and Marshall is a Utah limited liability company, whose primary place of business is in Utah.

7. Defendant Dave Gibb is a Utah citizen, whose primary place of residency is in Utah.

8. Defendant Martin Evans is a Utah citizen, whose primary place of residency is in Utah.

9. Defendant Kathleen Evans is a Utah citizen, whose primary place of residency is in Utah.

10. TaxPro Tax and Accounting is a Utah limited liability company whose primary place of business is in Utah.

11. Company Legally Mine, LLC is a Utah limited liability company.

12. The events giving rise to this Complaint took place in the state of Utah.

13. This Court has subject matter jurisdiction over this action following the conclusion of the Arbitration.

14. Venue is proper in federal court pursuant to 28 U.S.C.A. § 1331 because the claim arises out of a violation of a law of the United States.

15. Arbitration is not appropriate because 26 U.S.C.A. § 7623(d)(5)(B) precludes the enforcement of an arbitration provision when a retaliation claim is brought.

**GENERAL ALLEGATIONS**

16. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

17. Legally Mine is a limited liability company that was started by Defendant Daniel McNeff in 2009, providing tax, asset protection, and financial strategy advice to discerning clients.

3

18. Defendant Daniel McNeff founded Legally Mine and paid Ammon in Company equity rather than a significant amount of past-due wages.

19. Ammon and Matt have worked with Legally Mine as employees since 2009.

20. Matt earned an ownership interest as partial compensation for his services.

21. The Operating Agreement lists the current membership interests of Legally Mine as follows: Dan McNeff (79%), Ammon McNeff (11%), and Matthew McNeff (10%).

22. Plaintiffs dispute the membership interest percentage, as Dan has reduced his ownership interest through continuing improper draws.

23. From 2009 to 2019, Dan served as managing member of Legally Mine.

24. During his time as managing member, Dan took excessive non-pro-rata distributions, siphoned Company funds for unrelated entities, failed to pay taxes timely, commingled millions of funds, and mischaracterized personal charges as travel expenses.

25. On October 16, 2019, Plaintiffs filed a Complaint and a Motion for Temporary Restraining Order due to Dan's improper activities, including the mishandling of taxes, in his capacity as the managing member of Legally Mine.

26. Dan McNeff hired Defendants Tom Seiler and SAFM to represent him personally in the litigation.

27. The Temporary Restraining Order was granted, which ordered the status quo (including a prohibition of the termination of Plaintiffs) be maintained.

28. When the case was transferred to arbitration, the Arbitrator ordered the Parties maintain the status quo.

29. Around December 2019 or January 2020, Dan hired Martin and Kathleen Evans to

4

provide financial services to Legally Mine.

30. In the course of litigation and discovery, Plaintiffs discovered serious financial wrongdoings relating to Dan's dealings with the Internal Revenue Service.

31. Plaintiffs filed a whistleblower report with the IRS on January 29, 2020.

32. Shortly after the whistleblower report was filed, Dan demoted Ammon as President and appointed Lindsey Thompson to be interim President of Legally Mine.

33. Defendants Dan, Seiler, SAFM, Lindsey, and Martin expressed discontent on various occasions about Plaintiffs' filing the whistleblower report with the IRS.

34. On July 6, 2020, Dan was expelled as manager of Legally Mine based on this wrongdoing. Final Decision and Award attached hereto as **Exhibit A** at ¶ 7.

35. Further, Dan was permanently enjoined from serving as manager again. *Id*; *See also* Clarification Regarding Amended Final Decision and Award attached hereto as **Exhibit B** at 1 (clarifying that "Dan has no authority to act as managing member").

36. The Final Decision and Award allowed for the selection of a new manager and, as clarified, the new manager would be the only individual to "have the power to exercise the authority accorded the 'managing member' of Legally Mine as set forth in the Legally Mine Operating Agreement." **Exhibit A** at ¶ 7; **Exhibit B** at 1.

37. On Tuesday, September 15, 2020, the arbitration tribunal informed the Parties that "the Tribunal believes its jurisdiction with respect to this matter is concluded."

38. On Monday, September 21, 2020, Defendants Dan and Lindsey terminated both Ammon and Matt in retaliation for bringing Dan's financial misconduct to the attention of the IRS and the tribunal.

39. Upon information and belief, Defendants Dave, Martin, and SAFM consulted with Lindsey and Dan regarding Plaintiffs' termination.

40. But for Plaintiffs filing a Complaint alleging wrongdoing to the IRS and a whistleblower report they would not have been terminated.

41. Contrary to the Final Award's outlining of a specified process to select a new manager, Dan and Lindsey stonewalled Plaintiff's efforts to select a manager.

42. Since the Final Decision and Award, Dan continues to engage in financial misconduct that was not addressed in Arbitration.

43. On August 14, 2020, Defendants Dan and Lindsey, with assistance from Martin and SAFM, filed articles of conversion with the Division of Corporations, fraudulently converting Legally Mine into a corporation without the knowledge or consent of Plaintiffs. See Articles of Conversion attached hereto as **Exhibit C.**

44. Dan, Martin, Lindsey, and Kathleen revoked Plaintiffs' ability to access company financial information ordered by the Arbitrator, including bank statements and books and read-only access to the Company QuickBooks.

45. Pursuant to Utah Law and the Operating Agreement, Plaintiffs are entitled to access to Legally Mine financial information and have been repeatedly denied access to these records.

### FRAUDULENT NONDISCLOSURE, LYING UNDER OATH, CONSPIRING AGAINST PLAINTIFFS, AND MISUSE OF PPP FUNDS

46. Upon information and belief, Defendants Dan, Lindsey, SAFM, Gibb, and the Evans conspired together to open a bank account at Altabank without giving notice or receiving consent from Plaintiffs.

47. Upon information and belief, Lindsey's brother works as a senior vice president of Altabank and was involved in obtaining $1.4M in PPP funds for the benefit and personal gain of Defendants without Plaintiffs' knowledge, consent or approval.

48. The $1.4M in PPP funds have been secretly obtained and distributed without Plaintiffs' knowledge or consent for the personal gain of Defendants.

49. Upon information and belief, Altabank opened a bank account at Defendants Dan, Lindsey, Martin, and Kathleen's request. Because of this, Dan, with the assistance of Lindsey and Martin, was able to improperly and fraudulently apply for the Paycheck Protection Program in April 2020, without the knowledge or Consent of Plaintiffs.

50. The instructions on the PPP Borrower Application Form state: "By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been… delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification." See PPP Loan Application attached hereto as **Exhibit D**.

51. Dan's signature on the application certifies that, at the time of the signature, Dan was not delinquent on any taxes for the last three (3) years.

52. At the time of the signature, Dan currently had at least one known IRS Levy against him.

53. On February 11, 2020, the IRS served a Notice of Levy of Dan's Wages to Legally Mine, LLC.

54. On July 2, 2020, the IRS sent a release of levy to Legally Mine, LLC and Legal Bear, LLC, which was sent to the arbitration tribunal by Tom Seiler.

55. Dan's signature perjures himself and renders the application fraudulent.

56.     Upon information and belief, all Defendants assisted Dan in applying for the PPP loan.

57.     Upon information and belief, all Defendants knew, or should have known that the PPP

loan application was fraudulent.

58.     After repeated verbal and written requests about the status of any PPP loan application,

on May 12, 2020, Defendant SAFM, acting through its agent Tom Seiler represented that

the PPP loan "has not been funded to Legally Mine." Fig 1.



**SEILER, ANDERSON, FIFE & MARSHALL, LC**

*Attorneys and Counselors at Law*

Thomas W. Seiler          Lacee M. Whimpey
Jared L. Anderson          Perris E. Nelson
Morgan Fife               Scott B. Mosley
Derek T. Marshall[2]       Mark F. Robinson[1]
                          Norman H. Jackson [1,3]

May 12, 2020

**Sent by U.S. Mail and Email**

Steven R. Sumsion
**SUMSION BUSINESS LAW**
3651 N 100 E, Suite 300
Provo, UT 84604
steve@businesslawutah.com

Re:     *McNeff v. McNeff*

Dear Steve:

I have learned that the Paycheck Protection Program Loan has not been funded to
Legally Mine.

Sincerely,

SEILER, ANDERSON, FIFE & MARSHALL, LC

Thomas W. Seiler
Attorney at Law
tws@safmlaw.com

TWS:jb

2500 North University Avenue, Provo, Utah 84604, Telephone (801) 375-1920, Fax (801) 377-9405
1) Of Counsel  2) Also licensed in Idaho  3) Judge, Utah Court of Appeals, Retired   www.safmlaw.com

59.     Upon information and belief, Defendants were aware that the PPP loan was approved prior to Seiler's representation.

60.     Upon information and belief, SAFM intentionally made the representation the night before the loan funded in attempts to deceive Plaintiffs as to the true amount of the PPP proceeds (the "Proceeds").

61.     Legally Mine received $1,396,000.00 in Proceeds from the PPP the *following day* on May 13, 2020.

62.     Over the next few months, most of the Proceeds were distributed with over $600,000.00 going to the Defendants.

63.     On or around May 18, 2020, Dan signed a check to himself for $113,000.00 from the secret Altabank account, using PPP loan funds.

Fig. 2

64. On or around May 18, 2020, Dan, Lindsey, and/or Martin issued a check for $23,227.00 to Dave from the secret Altabank account, using PPP loan funds.

65. On or around May 18, 2020, Dan, Lindsey, and/or Martin prepared a check for $692.49 to Lindsey from the secret Altabank account, using PPP loan funds.

66. On May 27, 2020, Defendant Dan testified that he did not know the status of the PPP loan.

67. On June 2, 2020, Dan signed a check to himself from the secret Altabank account during trial for $300,000.00, using PPP loan funds.



Fig. 3

68. On June 3, 2020, Dan signed/authorized a check for $60,000.00 to Defendant Seiler during trial for Dan's personal legal fees from the secret Altabank account, using PPP

loan funds.



Fig. 4

69.    On June 8, 2020, Dan, Thompson, and/or Evans issued a check to Martin and Kathleen Evans from the secret Altabank account, using PPP loan funds.

70.    On June 10, 2020, Lindsey, the acting president and recipient of funds from the PPP loan testified that he did not know if the loan was funded, despite having received a check from the PPP loan as early as May 18, 2020.

71.    At no point in time did any Defendants inform Plaintiffs of the PPP loan funding.

72.    At no point did SAFM inform the Tribunal or the Parties that Seiler's previous representation that the PPP loan did not fund was no longer accurate, nor did he correct the untruthful testimony.

73.    The PPP loan did not show up on the Company books for months.

11

74. The Altabank account did not show up on the Company books for months.

75. Upon information and belief, all Defendants conspired to keep the PPP loan's funding secret from Plaintiffs by, among other things, opening a secret bank account, intentionally misrepresenting the funding status of the loan, and keeping the loan records off the books.

76. Dan has taken at least $430,000.00 of Legally Mine's PPP funds for personal use.

77. According to the Small Business Association ("SBA") rules for disbursement of funds, "the compensation of an individual employee in excess of an annual salary of $100,000.00, prorated as necessary" is expressly excluded from the SBA's definition of payroll costs. See SBA PPP Interim Final Rules attached hereto as **Exhibit E**.

78. Dan's taking of the funds to pay off his debts—notwithstanding the illegality of using a government loan to remove an IRS Levy—expressly violates this term of the PPP loan agreement.

79. These misappropriated funds from the PPP were not considered or ruled upon in the prior arbitration proceedings.

80. That these misappropriated funds were not considered or ruled upon is evidenced by:

   a. No evidence regarding use or existence of the funds was presented to the Tribunal until a week after trial.
   b. Ammon and Matt did not know about the PPP funds until after trial and Defendants Dan, Martin, Lindsey, and Dave hid and lied about the funds during trial.
   c. Dan admitted to intentionally hiding the funds from the tribunal and Plaintiffs.
   d. No order, ruling, or decision, including the Final Decision and Award and its amendments and clarifications, make any finding regarding use of the funds or reference use of the funds as supporting any legal conclusion or decision.
   e. The Final Decision and Award specifically states that the PPP misuse was

not taken into account when recalculating capital accounts. **Exhibit A**, footnote no. 2 (recalculated equity account balances "do not, however, take into consideration use of PPP funds" for uses other than for the repayment of loans owed Dan).

81.    The prior arbitrator expressly contemplated new arbitration proceedings based on new evidence.

82.    On August 12, 2020, the arbitrator stated, "I suppose new grievances can be determined by new arbitration proceedings."

83.    After the six (6) day trial, Plaintiffs became aware that the PPP loan worth $1.39 million was funded on May 13, 2020.

84.    Dan McNeff testified that the IRS levy in the amount of approximately $300,000 was paid off by a loan he received from Mark Comer.

85.    Even though Mark Comer provided a loan to pay the IRS Levy, PPP records show that $300,000 (the same amount that Mr. Comer gave to Dan) was taken out of the Altabank account.

86.    Dan, through SAFM, submitted a "promissory note" from Mark Comer.

87.    Dan, through SAFM, submitted a "promissory note" between Dan and Legally Mine that was "dated" April 2, 2020.

88.    After the arbitrator specifically asked when the note was created, Dan admitted that it had been made June 23, 2020, two days prior to submitting to the tribunal, but was backdated.

89.    Upon information and belief, Dan, Lindsey, and SAFM intentionally attempted to mislead the Plaintiffs and the tribunal by submitting a document that was recently created but purported to be from months earlier.

90.    Both Lindsey Thompson and Dan McNeff testified that the PPP was not funded.

91.    Dave Gibbs claimed he had no knowledge about the PPP loan.

92.    Lindsey Thompson was promoted to President of Legally Mine immediately after

Ammon was removed as President.

93.    Martin served as an expert witness in favor of Dan.

94.    On June 8, 2020, Martin's company, Tax Pro and Accounting, received a check of

$71,848.00 that was funded by the PPP loan.



Fig. 5

95.    SAFM received a $60,000 check that was funded by the PPP loan.

96.    SAFM is not an employee of Legally Mine.

97.    According to the SBA's rules for the PPP use, the loan is to ensure the recipient of the

loan can meet payroll of employees and for rent payments.

98.     Payroll costs:

> consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation." See **Exhibit E**.

99.     SAFM, Dan's personal counsel, cashed and has retained the proceeds from the $60,000.00 check.

100.    After the Arbitrator received information about the inconsistent testimony and proof regarding the PPP loan, the Arbitrator chose not to consider the evidence when it came to equity accounts.

101.    The Arbitrator was paid $5,990.20 from the secret bank account containing the PPP funds to cover a portion of the Arbitration cost.

102.    Upon information and belief, the Arbitrator's payment was provided by the PPP loan funds.

## VIOLATIONS OF THE FINAL DECISION AND AWARD

103.    The Final Decision and Award permanently enjoins Dan from exerting managerial control over Legally Mine.

104.    Dan believes he has the right to managerial authority over Legally Mine. See Dan's Letter Claiming Managerial Authority attached hereto as **Exhibit F**.

105.    Dan continues to exert managerial authority through, among other things:

15

    a.   Maintaining financial control of the company, including signing all checks

    b.   Directing the assignment of the speakers

    c.   Issuing bonuses

    d.   Issuing refunds

    e.   Contacting business associates and service providers to direct their actions

    f.   Making hiring and firing decisions

    g.   Granting vacation requests and

    h.   Ordering the withholding of financial information from Plaintiffs

106.    The Final Decision and Award permanently enjoins Dan from using Legally Mine resources for RHM and PROcure, entities not owned by Legally Mine.

107.    Upon information and belief, RHM and PROcure are owned personally, with no portion of these entities owned by Legally Mine.

108.    Dan and/or Lindsey hired Ben Dyches to work for PROcure projects while using Legally Mine's payroll.

109.    Legally Mine records indicate that Defendants Dan, Lindsey, Martin, and Kathleen have continued to cause Legally Mine funds to be used on PROcure projects.

110.    On August 4, 2020, Dan issued a $200.00 bonus per review to any employee who had someone post a 5-star Google review for Legally Mine.

111.    Dan refused to cede decision-making authority over payments on Legally Mine's purchase of stock in Bam Franchising, Inc., a Utah corporation.

112.    On or around January 8, 2021, Plaintiffs informed Defendants Seiler and Dan about this pending lawsuit.

16

113. That same day, a Legally Mine employee emailed the employees of the Company to let them know that all emails from the two known main Company email domains, legallymineusa.com and legallymine.co were going to be "dissolved."

114. Upon information and belief, Defendants caused or allowed this destruction of evidence due to the pending and continuing litigation.

115. Upon information and belief, Defendants's actions may violate a subpoena issued by the Internal Revenue Service to Legally Mine.

## FINANCIAL MISCONDUCT WITH COMPANY ASSETS

116. Dan's continued exertion of managerial authority in violation of the Final Decision and Award have harmed Plaintiffs.

117. Dan, Lindsey, Kathleen, and Martin refused to maintain the payments for BAM Franchising, causing Legally Mine to lose the stock it had purchased.

118. The sellers of the stock repeatedly demanded payments, as Legally Mine had agreed.

119. Plaintiffs, having been frozen out of the Company, were powerless to do anything beyond ask that the payments be made by Defendants Dan and Lindsey.

120. Plaintiffs repeatedly asked, requested, and demanded that payments be made regarding the stocks.

121. Each request was met with a snide comment or a vitriolic retort.

122. Plaintiffs requested Dan, Lindsey, and Kathleen to make these payments on multiple occasions.

123. Defendants Dan and Lindsey refused to make the required payments under the stock purchase agreement.

17

124. The sellers of the stock have repossessed the stock due to the non-payment.

125. Legally Mine has suffered over a million dollars in lost assets due to the actions or inactions of Defendants Dan, Lindsey, Kathleen, and Martin with regards to paying Company bills on time.

## **LINDSEY THOMPSON**

126. Shortly after Arbitration commenced and due to the filing of the Complaint regarding Dan's actions concerning the IRS, Dan demoted Ammon and Matt from their positions, stripped them of their responsibilities, and removed them from the office.

127. While Dan kept Ammon and Matt on the payroll, Lindsey was promoted to President of Legally Mine after Dan removed Ammon from his position.

128. On June 11, 2020 Lindsey testified under oath that he was unaware of the PPP loan being funded.

129. On July 6, 2020, Lindsey was tasked to make the day-to-day decisions of Legally Mine during the selection process of a new manager.

130. The Final Award prohibits Legally Mine from providing financial support to RHM, PROcure, and Legal Bear.

131. Lindsey violated the Award by providing funding to these entities by, among other things,

    a. Making payment of $11k to Legal Bear for "rent" when Legally Mine does not rent *any* property from Legal Bear or Dan.
    b. Hiring Ben Dyches to work for PROcure, who has been working at the Legally Mine office in behalf of PROcure.
    c. Allowing Jonathan Madsen to run and operate ProCure's website. Mr. Madsen is an employee of Legally Mine.
    d. Violating the permanent injunction against, causing or allowing to cause Legally Mine to make payments to, for, or on behalf of ProCure, by

18

causing a payment of $30,000.00 to MATCHBACK to cover expenses accrued up to August 17, 2020.

e. Using Legally Mine funds to cover Benjamin Dyches' salary to work on ProCure projects.

f. Hiring and using other employees that work on behalf of ProCure including, but not limited to Gary and Pam Thacker, JT Thomas, Mike (last name unknown), Gary Harker, and Jonathan Madsen.

132. Email communications, invoices, and other recordings clearly show Legally Mine's financial involvement in ProCure.

133. During a hearing, Lindsey admitted under oath that he had made at least one phone call to a third party where he claimed to be Ammon McNeff.

134. Lindsey used Ammon McNeff's name and purported to be Ammon in order to change the ownership of a Company account.

135. The Company account had value.

136. The Company account was in Ammon's name.

137. Lindsey used Ammon's personally identifying information without Ammon's consent.

## CONCEALMENT OF FRAUDULENT CONVERSION

138. Section 1.01(b) of Legally Mine's Operating Agreement states that the Company may not be converted into a different form of entity without the consent of all members of the Company.

139. Utah Code Section 48-3a-1043 requires that all members who have a vote must approve of the conversion of an LLC to any other corporate entity.

140. On August 14, 2020 Lindsey claims to have approved the conversion of Legally Mine from an LLC, into a corporation after discussing with Defendants Dan, Seiler, Martin, Kathleen, and others.

19

141. Legally Mine employee Samantha Bunker disputes Lindsey's claim, stating that Defendant Dan instructed her to file the conversion.

142. Ammon and Matt did not approve the company conversion.

143. Ammon and Matt are members of Legally Mine who have voting rights.

144. Lindsey admitted under oath and in an email that he did not seek the approval of the minority shareholders of the company.

145. Lindsey also admitted under oath that he asked Jonathan Madsen how to delete phone calls recorded by the company.

146. Lindsey is a personal puppet of Daniel when it comes to making decisions for the company.

147. Lindsey misrepresents the Award, repeatedly claiming himself as the "appointed manager" of Legally Mine.

148. Lindsey is not the manager of Legally Mine.

149. Lindsey has sent emails to Plaintiffs banning them from the Company premises.

150. Lindsey has withheld financial information from Plaintiffs.

151. Lindsey has violated his fiduciary duties to Plaintiffs and to the Company.

152. Lindsey's actions have violated what is required by the Final Award.

## SEILER AND SAFM

153. Ammon and Matt brought a suit against Dan in their individual capacities and derivatively on behalf of Legally Mine due to Dan's mishandling of company funds, tax problems, etc.

154. Dan hired SAFM to represent him after Ammon and Matt filed their Complaint.

155. SAFM was not hired to represent Legally Mine in the litigation.

156. On May 12, 2020 Seiler wrote a letter to Plaintiffs' Counsel claiming that the PPP loan had not funded.

157. On May 13, 2020 the PPP loan was funded into a secret account.

158. Upon information and belief, Seiler knew of the impending funding of the PPP loan into the secret account.

159. After Plaintiffs filed their Motion to Confirm the Arbitration Award, Seiler filed a wrongful Motion to Vacate including Legally Mine as a Party and purporting to represent Legally Mine (who was attempting to remove Dan) and Dan (who was attempting to not be removed) in the same case.

160. This case is brought against the majority shareholder for misconduct.

161. Rule 1.7 of the Rules of Professional Conduct prohibits any firm from representing both Dan and Legally Mine in this case.

162. SAFM cannot represent Legally Mine and Dan in a case where they are opposing parties.

163. SAFM also faces a conflict of interest due to SAFM accepting monetary benefits from Legally Mine.

164. During Arbitration, Dan paid SAFM $60,000.00 for legal fees from Legally Mine's secret account.

165. SAFM also received more funds from Legally Mine on October 12, 2020, when SAFM was issued a check for $19,620.85.



Fig. 6.

166.   SAFM was issued two more checks worth $58,558.50 and $10,000.00.





Fig. 7

167.   If SAFM did actually represent Legally Mine, SAFM and Seiler have violated the

fiduciary duty to the Company and its owners.

168.   Utah Rule 3.3 of the Rules of Professional Conduct enumerates counsels's specific duty

of candor toward the Tribunal:

22

A lawyer shall not knowingly or recklessly:

(a)(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material of fact or law previously made to the tribunal by the lawyer; or

(a)(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction directly adverse to the position of the client and not disclose by opposing counsel.

169. Dan, Lindsey, Dave, and Martin all gave false testimony regarding the funding of the PPP loan.

170. SAFM has neither persuaded their clients to correct the false material statements, nor have they withdrawn as counsel as a "signal to the court the lawyer's unwillingness to assist [their] client's conduct."

171. Surprise is not a factor because SAFM has not made good faith efforts to correct their client's conduct and allowed the court to rely on false information.

172. SAFM has, "by acquiescence or tacit consent," assisted in misleading the court by their failure to correct their client's conduct regarding the funding of the PPP loan.

173. The false information regarding the PPP loan and their proceeds is material because there will be significant tax implications for Plaintiffs as a result of Dan's fraudulent disbursement of the PPP loan.

174. Dan has taken over $430,000.00 of the PPP loan to himself, when the SBA prohibits disbursement of funds to those whose salary is over $100,000.00.

175. Neither is the funding of the PPP loan a moot point—Plaintiffs, because they have been

terminated from their positions, are powerless to affect the disbursement of the PPP funds for legitimate purposes, which in turn could implicate them in Dan's fraudulent activities.

176. SAFM's failure to follow Rule 3.3 has, in its turn, allowed Dan to recklessly continue in his fraudulent activities and adversely affect Plaintiffs.

177. Upon information and belief, SAFM encouraged, aided, and abetted other Defendants to withhold Company financial information from Plaintiffs in violation of the Arbitration Award and Utah Law.

178. On January 7, 2020, Plaintiffs, acting through counsel, demanded the financial information be restored.

179. Tom refused on multiple occasions.

## MARTIN AND KATHLEEN EVANS

180. Upon information and belief Martin Evans and Kathleen Evans started working for Legally Mine as outside contractors on or around December 2019.

181. Martin and Kathleen have been responsible for the financial records of the Company since at least January 2020.

182. During the course of the previous litigation, the Arbitrator ordered that Ammon and Matt have read-only access to the Company financials.

183. Upon information and belief, after trial, Martin, Kathleen, Dan, SAFM and Lindsey conspired to withhold financial information from Plaintiffs.

184. Martin, Kathleen, Dan, and Lindsey withdrew the access to view financial information from Plaintiffs.

185. After withdrawing the information, Defendants Martin, Kathleen, Dave, and Lindsey

caused secret retroactive changes to the Company Quickbooks to favor Dan and make it appear that Dan had not engaged in financial misconduct.

186. Upon information and belief, Dan and/or Lindsey required Martin and Kathleen to change the company financial records to hide Dan's illegal actions.

187. Plaintiffs asked multiple times for the Evans' to provide access to all company financial records.

188. Martin and Kathleen continue to withhold company finances from Plaintiffs.

189. Ammon and Matt are shareholders of the company and have a right to receive the financial records.

190. Pursuant to Utah Code §48-3a-410, Dan and Lindsey are required to provide "without demand, any information concerning the limited liability company's activities, affairs, financial condition, and other circumstances which the limited liability company knows and is material to the proper exercise of the member's rights and duties under the operating agreement[.]"

191. Defendants Dan, Lindsey, Kathleen, and Martin, despite repeated requests, have refused to provide the required information.

192. Upon information and belief, all Defendants have worked in connection with one another to actively withhold the financial information from Plaintiffs.

193. During Arbitration, Martin served as an expert witness, and testified about having reviewed Legally Mine finances.

194. Martin observed the false testimony regarding the PPP not having been funded.

195. Martin received checks that came from the secret bank account.

196. During the evidentiary hearing Martin testified that he had no role at all in obtaining the PPP loan.

197. Despite reviewing the finances and receiving money from the PPP loan, Martin did not correct the false testimony.

198. Martin and Kathleen have withheld information from Plaintiffs.

199. As fiduciaries to the Company, Martin and Kathleen had a duty to the Members, including the Plaintiffs.

200. Martin and Kathleen have violated their fiduciary duties by, among other things,

    a. Knowingly allowing Company funds to be used for banned expenses.

    b. Retroactively changing Company financial records without giving notice to Plaintiffs.

    c. Withholding financial information from Plaintiffs.

    d. Due to Kathleen and Martin's withholding financial records, Ammon and Matt couldn't stop the mishandling of the company funds.

**FIRST CLAIM FOR RELIEF**
**(Retaliation in Violation of 26 U.S.C.A § 7623- Defendants Dan and Lindsey)**

201. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

202. Plaintiffs filed a complaint in state court regarding the potential mismanagement of Company funds as they related to paying taxes on time.

203. Upon receiving discovery in the case, Plaintiffs realized that the tax issues were much more severe than they had realized.

204. Plaintiffs filed a whistleblower report with the IRS on January 29, 2020.

26

205. In September 2020, Lindsey stripped Ammon of his ability to communicate with other employees.

206. On September 21, 2020, Defendants Lindsey and/or Dan terminated Ammon and Matthew from their employment.

207. But for Ammon and Matthew's filing a complaint and a whistleblower report, they would not have been terminated.

208. Lindsey and Dan have withheld the salaries of Ammon and Matt since September 21, 2020.

209. Wherefore, pursuant to 26 U.S.C.A. § 7623, Plaintiffs request:

   a. Reinstatement with the same seniority status that they would have had, but for reprisal,

   b. The sum of 200 percent of the amount of back pay and 100 percent of all lost benefits, with interest,

   c. Compensation for any special damages sustained as a result of the reprisal, including litigation costs, expert witness fees, and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Concealment – against Dan, Lindsey, SAFM, Martin, Kathleen, and Seiler)

210. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

211. As a result of his position with Legally Mine, Dan had a duty of loyalty, care, and good faith and fair dealing to Legally Mine and its members.

212. As a result of his temporary position as president of the company and the temporarily appointed position to manage the day-to-day affairs of Legally Mine, Lindsey had a

27

fiduciary duty to Legally Mine and its members.

213. As bookkeepers/accountants for the Legally Mine, Martin and Kathleen had duties to act professionally, to keep accurate records, to refrain from falsifying records or allowing records to be falsified, and to follow the law, among others.

214. SAFM had, among others, a duty of candor to the tribunal, duty to correct any false statements made to the tribunal, a duty to correct false testimony presented to the tribunal, duty to make remedial measures upon discovering false evidence, a duty to avoid conflicts of interests, a duty to the organization as a client, a duty to not conceal evidence or assist others to conceal evidence, and a duty to not assist a witness to testify falsely.

215. Defendants have worked in connection with one another to conceal the following actions:

   a. The existence of the Altabank account,

   b. The funding of the PPP loan into the secret Altabank account,

   c. The fraudulent statements used to apply for the PPP loan,

   d. The misuse of the PPP loan funds,

   e. The alteration of Legally Mine Financial Records, and

   f. The fraudulent conversion of Legally Mine to a corporation.

216. Each of the aforementioned concealments was not disclosed to Plaintiffs.

217. Each of the concealments was material to the operations of Legally Mine, to Plaintiffs, and to the previous litigation.

218. Each of the aforementioned concealments was known to all Defendants.

28

219. Due to their respective roles, all Defendants each had a duty to communicate the concealed information to Plaintiffs.

220. Defendants failed to communicate the concealed information to Plaintiffs.

221. Plaintiffs have been harmed and will continue to be harmed by Defendants' fraudulent nondisclosures.

222. Therefore, Plaintiffs request judgment against all Defendants to be jointly and severally liable in the amount in an exact amount to be proven at trial, plus punitive and exemplary damages, plus attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(Fraudulent Conversion of Legally Mine – against Dan, Lindsey, Gibb, SAFM, and Seiler)**

223. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

224. Legally Mine is an LLC owned by Defendnat Daniel, Plaintiff Ammon, and Plaintiff Matthew McNeff.

225. Upon information and belief, Defendants Dan, Lindsey, SAFM, Martin, and Kathleen counseled and conspired together to change Legally Mine from an LLC to a Corporation.

226. Lindsey stated under oath that he received counsel from Seiler, Martin, Dan, and others regarding the conversion of the Company.

227. On or around August 14, 2020, Dan and/or Lindsey instructed Samantha Carter to file fraudulent articles of conversion with the state of Utah.

228. On or around August 14, 2020, Samantha Carter filed fraudulent articles of conversion that contained an affidavit, under penalty of perjury, that all members of the LLC consented to the conversion.

29

229. Plaintiffs were unaware of this conversion.

230. Plaintiffs did not consent to this conversion.

231. Plaintiffs discovered the fraudulent conversion.

232. Dan, Lindsey, and Seiler, having been caught in their fraud, nonetheless refused to withdraw the articles of conversion until weeks later.

233. Plaintiffs were forced to report to the Division of Corporations regarding the fraudulent conversion.

234. Plaintiffs were forced to file an Order to Show Cause regarding the fraudulent conversion.

235. Therefore, Plaintiffs request damages as follows:

   a. A permanent injunction against all Defendants from attempting to change the corporate structure without written approval of Plaintiffs

   b. For all costs and attorneys' fees associated with reporting and fixing the fraudulent conversion

   c. For punitive damages due to the egregious nature of this conduct

   d. For any other damages the Court sees just and proper.

### FOURTH CLAIM FOR RELIEF
**(Civil Conspiracy – Against All Defendants)**

236. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

237. In order to claim civil conspiracy five (5) elements must be met

   a. A combination of two or more persons

   b. An object to be accomplished

    c.  A meeting of the minds on the object or course of action

    d.  One or more unlawful, overt acts, and

    e.  Damages as a proximate result thereof

*Peterson v. Delta Air Lines, Inc.,* 2002 UT App 56, 12, 42 P.3d 1253

238.  Plaintiffs assert that all Defendants were involved in the conspiracy.

239.  Defendants' objective was to hide all forms of information that way Plaintiffs would be unaware of Defendants illegal actions.

240.  Defendants all agreed to ensure that Plaintiffs remain unaware of their egregious actions, including:

    a.  Defendants withheld access to QuickBooks and other financial information,

    b.  Withholding information of the funding of the PPP loan,

    c.  Lying under oath regarding the status of the PPP loan,

    d.  Fraudulently converting the Company into a corporation

241.  Throughout the arbitration, the Arbitrator ordered the Parties maintain the status quo, with the last order coming in July 2020.

242.  On September 21, 2020, Defendants conspired against Ammon and Matt by terminating them as employees of the company.

243.  The termination of Ammon and Matt is a violation of the status quo.

244.  Section 1.01(b) of Legally Mine's Operating Agreement states that the Company may not be converted into a different form of entity without the consent of all members of the Company.

245.  Utah Code Section 48-3a-1043 requires that all members who have a vote must approve

31

of the conversion of an LLC to any other corporate entity.

246. The Company's ownership is broken down as Dan McNeff (79%), Ammon McNeff (11%), and Matthew McNeff (10%).

247. On August 14, 2020 Lindsey claims to have approved the conversion of Legally Mine from an LLC into a corporation after discussing with Defendants Dan, Seiler, Martin, Kathleen, and others.

248. Plaintiffs never consented to the conversion.

249. Defendants violated Utah Code Secton 48-3a-10043.

250. Therefore, Plaintiffs request judgment against all Defendants to be jointly and severally liable in the amount in an exact amount to be proven at trial, plus punitive and exemplary damages, plus attorneys' fees.

### FIFTH CLAIM FOR RELIEF
**(Withholding Financial Information in Violation of §48-3a-410, as to all Defendants)**

251. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

252. Plaintiffs have historically had access to the Company financial information.

253. Without demand, Plaintiffs are entitled to "any information concerning the limited liability company's activities, affairs, financial condition and other circumstances which the limited liability company knows and is material to the proper exercise of the member's rights."

254. All Defendants have conspired, encouraged, and worked one with another to actively conceal financial information from Plaintiffs.

255. Defendants have, among other things:

    a.   Withdrew access to view company finances

    b.   Refused to provide monthly, quarterly, or year-end financial updates

    c.   Hid over a million dollars of secret loan money in a concealed bank account

    d.   Intentionally maintained fraudulent books to hide funds

    e.   Made alterations to Company financial

256.    Plaintiffs have demanded access to the financial information repeatedly from Dan, Lindsey, Seiler, Kathleen, and Martin and have been denied access.

257.    Therefore, Plaintiffs request immediate access to all financial records of the company.

**SIXTH CLAIM OF RELIEF**
**(Repayment of $60k taken from PPP funds– All Plaintiffs Against SAFM and Dan)**

258.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

259.    Any demand made to Dan to have the Company pursue a claim against him would be futile.

260.    Dan conferred upon himself, at the expense of Plaintiffs, a benefit in the amount of more than $1,000,000.00 for distributions and reimbursements.

261.    Dan has acknowledged, appreciated, and accepted the benefit conferred upon him.

262.    The benefit was conferred upon Dan under circumstances making it inequitable that Dan keeps the benefit without paying the full value of the benefit.

263.    To permit Dan to retain the benefit received would result in an unconscionable and unjust enrichment of Dan at Plaintiffs' expense.

264.    Plaintiffs are therefore entitled to judgment against Dan for Dan's general and compensatory damages resulting from Dan's unjust enrichment, together with pre- and

33

post-judgment interest as provided for under Utah law, the exact amount to be established at trial.

265. Upon information and belief, Defendant SAFM entered into an agreement to repay the $60,000.00 advanced by Legally Mine if he was unsuccessful.

266. Dan was unsuccessful in litigation; Ammon and Matt were found to be the "substantially prevailing party for purposes of an award of attorneys' fees."

267. Plaintiffs requested repayment of the $60,000.00 on numerous occasions.

268. Defendant has refused to repay the $60,000.00.

269. Legally Mine is entitled to the $60,000.00 plus attorneys' fees incurred seeking the return of these funds.

270. Therefore, Plaintiffs request that Defendants repay the $60,000.00 check and all attorneys' fees that were incurred due to Defendants' unwilliness to return company funds.

### SEVENTH CLAIM FOR RELIEF
**(Waste of Corporate Assets – as to all Defendants)**

271. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

272. Legally Mine had a purchase agreement to purchase several million dollars' worth of stock in BAM Franchising.

273. The purchase agreement allowed for repossession of the stock if Legally Mine failed to make the monthly payments.

274. Legally Mine had an equity position of over one million dollars in the stock.

275. Upon information and belief, on or around February 2020, Dan, Lindsey, and Kathleen

caused payments to stop being made on the stock purchase agreement.

276. Dan, Lindsey, Kathleen, and Martin refused to maintain the payments for BAM Franchising, causing Legally Mine to lose the stock it had purchased.

277. Upon information and belief, SAFM encouraged nonpayment and/or negotiated on behalf of Legally Mine.

278. The sellers of the stock repeatedly demanded payments, as Legally Mine had agreed.

279. Plaintiffs repeatedly asked, requested, and demanded that payments be made regarding the stocks.

280. Plaintiffs requested Dan, Lindsey, and Kathleen to make these payments on multiple occasions.

281. Defendants Dan and Lindsey refused to make the required payments under the stock purchase agreement.

282. The sellers of the stock have repossessed the stock due to the non-payment.

283. Legally Mine has suffered over a million dollars in lost assets due to the actions or inactions of Defendants Dan, Lindsey, Kathleen, and Martin with regards to paying Company bills on time.

284. Wherefore, Plaintiffs request judgment against all defendants, jointly and severally in the amount of no less than $1,000,000.00, with the exact amount to be determined at trial, plus punitive and exemplary damages, plus attorneys' fees.

### EIGHTH CLAIM FOR RELIEF
**(Identity Theft, Utah Code Ann. § 78B-6-1701 – Ammon McNeff as to Lindsey and Dan)**

285. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

35

286.   Lindsey represented himself to be Ammon by Ammon's name without Ammon's consent on a telephone call.

287.   Upon information and belief, Lindsey also used Ammon's place of employment as information presented to the third party.

288.   Upon information and belief, Dan conspired with, assisted with, and encouraged this course of action.

289.   Ammon's name is personal identifying information.

290.   Ammon's place of employment is personal identifying information.

291.   Lindsey used the personal identifying information of Ammon to induce a third party to act.

292.   Lindsey used the personal identifying information of Ammon to attempt to obtain services from a third party.

293.   Lindsey used the personally identifying information of Ammon to attempt to divert funds from one account to another account.

294.   The value of the services, goods, and funds sought by Lindsey exceeds $5,000.

295.   Wherefore, pursuant to U.C.A. § 78B-6-1701, Ammon requests:

    a.   Actual damages in an amount to be determined at trial,

    b.   compensatory damages in the amount of $1,000 or up to three times the amount of actual damages, whichever is greater;

    c.   attorneys' fees;

    d.   court costs and

    e.   punitive damages.

f.   Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

## NINTH CLAIM FOR RELIEF
### (Conversion—Plaintiffs Ammon McNeff and Matthew McNeff as Against Dan and Lindsey)

296.   The Company's ownership is broken down as Dan McNeff (79%), Ammon McNeff (11%), and Matthew McNeff (10%).

297.   Legally Mine must make all distributions on a pro-rata basis except for Legally Mine's retention of the portion of Defendant Dan's distribution(s) that are required to true up his capital account. *Id*.

298.   Dan has taken $1,000,000.00 for personal use from Legally Mine, including from its PPP loan proceeds.

299.   Dan is owed no commissions, has no retained earnings, and has no outstanding credit at Legally Mine, as the ruling specifies that all debts are resolved as of July 6, 2020.

300.   The $115,000.00 in funds taken by Dan are above and beyond Dan's salary.

301.   Dan's withdrawals constitute distributions.

302.   No corresponding distribution has been taken by Ammon or Matt.

303.   Dan has taken non-pro-rata distributions in violation of the Final Decision and Award.

304.   This wrongful payment of Dan's non-pro distributions has deprived Plaintiffs of the money owed to them as per the Operating Agreement.

305.   Plaintiffs therefore request damages of no less than $600,000.00, in an amount to be determined at trial, plus treble and punitive damages, interest, and attorneys' fees.

## TENTH CLAIM FOR RELIEF
### (Improper Distribution of PPP Funds – Utah Code Ann. § 48-3a-401 et seq. – Legally Mine against Dan)

306.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

307.    The purpose of the PPP loan was strictly for payroll.

308.    Dan used the PPP loan for his own personal benefit.

309.    On June 2, 2020, Dan wrote a $300,000.00 check to himself from the Altabank account. See attached $300,000.00 check among the McNeff checks attachment.

310.    The next day on June 3, Dan paid off the IRS levy by ACH from his personal checking account, based on his sworn testimony the last week of trial.

311.    On June 11, Dan testified that he paid off $278,000.00 IRS Levy with exactly $300,000.00 from Mark Comer.

312.    On June 10-11, Dan and his expert Martin Evans, both claimed that they did not know the status of the PPP funding.

313.    Dan caused $60,000.00 of Legally Mine's PPP funds to be paid to SAFM in advancement of his legal fees.

314.    Section 7.06 of the Operating Agreement allow for the advancement of legal fees, but only if the party agrees to repay if unsuccessful.

315.    Upon information and belief, Dan entered into an agreement to repay the $60,000.00 advanced by Legally Mine if he was unsuccessful.

316.    Alternatively, Dan did not enter into an agreement to repay the $60,000.00 advanced by Legally Mine and should return the funds.

317.    In ¶7.06 of the Legally Mine Operating Agreement, it states, "the prevailing parties shall be awarded 100% of their reasonable costs and attorneys' fees."

318. Dan was unsuccessful in litigation; Ammon and Matt were found to be the "substantially prevailing party for purposes of an award of attorneys' fees."

319. Plaintiffs have requested repayment of the $60,000.00 to the Company on numerous occasions.

320. Dan and Seiler have refused to repay the $60,000.00.

321. Plaintiffs are entitled to the $60,000.00 to be returned plus attorneys' fees incurred seeking the return of these funds.

322. Plaintiffs therefore request damages of no less than $360,000.00, in an amount to be determined at trial, plus treble and punitive damages, interest, and attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF
### (Improper Distribution – All Plaintiffs as against Defendants Dan, Lindsey, Martin, and Kathleen)

323. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

324. Utah law requires that any distribution made to a member of a limited liability company be in proportion to the ownership of the company.  U.C.A. § 48-3a-404.

325. A member or manager who consents to an improper distribution is personally liable for the distribution.

326. The Award prohibits Dan from taking distributions.

327. Defendants Dan, Lindsey, Martin, and Kathleen were all aware of the requirements of Utah Law and the Award.

328. Defendant Dan has taken personal distributions of hundreds of thousands of dollars.

329. Each payment to Dan, to Dan's personal counsel, or to Dan's expert witness constitutes a distribution.

39

330. Dan has caused money to be paid to third parties on his behalf, with each of these payments constituting a distribution.

331. Defendants Dan and Lindsey have not provided Plaintiffs with their entitled share of the distributions.

332. Defendants Martin and Kathleen have approved of payments, despite knowing they are prohibited.

333. Plaintiffs therefore request compensatory and punitive damages in an amount of no less than two million dollars ($2,000,000.00), plus damages to be determined at trial.

**TWELFTH  CLAIM FOR RELIEF**
**(Improper Distributions from Operating Agreement and Final Decision and Award - against Defendants)**

334. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

335. The Operating Agreement provides the proper means for making and receiving distributions.

336. Defendant Dan has failed to follow the proper distribution requirements.

337. The Operating Agreement sets forth that if a Member receives a distribution in a non-pro-rata amount, that the Member's Capital Account be reduced.

338. Defendant Dan has made distributions to himself and wrongful reimbursements to himself that have reduced his Capital Account.

339. The reduction of his Capital Account may lead to a reduction of the Member's equity in the Company.

340. Defendant Dan's Capital Account has been reduced to below 66% interest in the Company.

341.   Therefore, Plaintiffs request a ruling by the Court that Defendant Dan's ownership in the Company has been reduced by his non-pro-rata distributions, in an exact amount to be determined at trial.

342.   Therefore, Plaintiffs request that Defendants return all improper disruptions that violate the Operating Agreement, in an amount to be determined at trial, plus treble and punitive damages, interest, and attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF
### (Removal of a Member – Utah Code Ann. § § 48-3a-602, 801 – All Plaintiffs Against Defendant Dan)

343.   Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

344.   Utah Code Ann. § 48-3a-801 provides that "a member may maintain a direct action against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or this chapter or arising independently of the membership relationship."

345.   Legally Mine has standing to bring a lawsuit against Dan for his improper actions which have harmed the Company.

346.   Utah Code Ann. § 48-3a-602(6) provides for removal of a member upon application by the Company or a member.

347.   Defendant Dan has engaged in wrongful conduct as set forth herein, including, but not limited to:

   a.   Hiding and lying about Company funds and accounts that Plaintiffs had a right to

41

know about;

b. Taking thousands of dollars from Legally Mine's PPP funds for personal use;

c. Improperly exerting managerial authority over Legally Mine in violation of the Final Decision and Award and Operating Agreement;

d. Directing Legally Mine resources to PROcure and RHM without declared distributions or retained earnings in violation of the Operating Agreement and the Final Decision and Award;

e. Otherwise violating the Operating Agreement and Final Decision and Award; and

f. Refusing to repay legal fees in violation of the Operating Agreement and the Utah LLC Act.

348. Each of these activities individually has adversely and materially, or will adversely and materially affect the Company's affairs and warrant a removal of Dan.

349. Each of these activities that violates the Operating Agreement and/or the duties set forth under U.C.A. § 48-3a-409 warrants removal of Dan.

350. Each of these activities also make it not reasonably practicable to carry on the activities and affairs with Defendant Dan as a Member.

351. Plaintiffs have been injured by Defendant Dan's actions.

352. Each of Defendant Dan's actions puts Legally Mine's goodwill and reputation at risk.

353. Public knowledge of Defendant Dan's actions would irreparably decimate Legally Mine's goodwill and reputation.

354. Upon information and belief, prospective and current clients would not trust Legally Mine to offer tax strategies if Legally Mine was being audited by the IRS for tax fraud.

355. The Utah Courts have also held that Courts have authority to expel members for wrongful behavior.

    a. The Utah Supreme Court held in *CCD v. Millsap,* 2005 UT 42, 116 P.3d 366 held that expulsion of a member is allowed even in the case where an Operating agreement prohibits expulsion.

    b. In *Hollady v. Storey*, 2013 UT App 153, 307 P.3d 584, the Court held that a member can be expelled under verbatim standard as LM's Operating agreement.

356. Utah Courts have held that punitive damages and attorneys' fees may be awarded when a member had breached fiduciary duties.

357. Plaintiffs are therefore entitled to an expulsion of Dan from his managerial capacity, membership, and ownership interest in Legally Mine pursuant to U.C.A. § 48-3a-602(6).

358. Therefore, Plaintiffs request the expulsion of Dan as a member of Legally Mine.

**FOURTEENTH CLAIM FOR RELIEF**
**(Removal of a Member – Operating Agreement § 1.09 – All Plaintiffs Against Dan)**

359. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

360. Section 1.09 of Legally Mine, LLC's Operating Agreements provides that upon application by the Company or a Member:

    i. Member may be expelled by judicial determination (on an application by the Company or another Member) that the Member

    ii. has engaged in wrongful conduct that adversely and materially affected the company's business;

    iii. has willfully or persistently committed a material breach of the Articles of

43

> Organization or this Agreement or of a duty owed to the Company or to the other Members under this Agreement or under the Act; or
>
> iv. has engaged in conduct relating to the Company's business which makes it not reasonably practicable to carry on the business with the Member.

361. Defendant Dan has engaged in wrongful conduct as set forth herein, including, but not limited to:

   a. Hiding and lying about Company funds and accounts that Plaintiffs had a right to know about;

   b. Taking thousands of dollars from Legally Mine's PPP funds for personal use;

   c. Improperly exerting managerial authority over Legally Mine in violation of the Final Decision and Award and Operating Agreement;

   d. Directing Legally Mine resources to PROcure and RHM without declared distributions or retained earnings in violation of the Operating Agreement and the Final Decision and Award;

   e. Otherwise violating the Operating Agreement and Final Decision and Award;

   f. Refusing to repay advanced legal fees in violation of the Operating Agreement and the Utah LLC Act; and

   g. Taking non-pro-rata distributions while his capital account is deficient in violation of the Operating Agreement and Final Decision and Award.

362. Each of these activities, on their own, has adversely and materially, or will adversely and materially affect the Company's affairs and warrant a removal of Dan.

363. Each of these activities that violates the Operating Agreement and/or the duties set forth

under U.C.A. § 48-3a-409 warrants removal of Dan.

364. Each of these activities also make it unreasonable to carry on the activities and affairs with Defendant Dan as a Member.

365. Ammon and Matthew are therefore entitled to an expulsion of Defendant Dan from his managerial capacity, membership and ownership interest in Legally Mine.

366. Therefore, Plantiffs request this Court to expel Dan as a member of Legally Mine.

**FIFTHTEENTH CLAIM OF RELIEF**
**(Removal as Member and Quasi-Manager for Violation of Final Decision and Award-**
**Defendants Dan and Lindsey)**

367. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

368. The Final Decision and Award expelled Dan permanently from his prior position as Manager.

369. The Arbitrator allowed Lindsey to remain as a quasi-manager to run the day-to-day affairs of the Company until a manager could be appointed.

370. The Arbitrator ordered that the status quo be maintained.

371. Arbitrator further clarified that Dan is not allowed to make any managerial decisions.

372. The Final Decision and Award orders Legally Mine to not provide financial support to RHM, PROcure, and Legal Bear.

373. Dan and/or Lindsey continued to provide funding to these entities.

374. Dan and/or Lindsey violated the Award by making payments to Dan or Legal Bear including an $11k check to Legal Bear for "rent" when Legally Mine does not rent *any* property from Legal Bear or Dan.

45

375. Dan and/or Lindsey violated the Award by hiring Ben Dyches and others with Legally Mine funds to work for PROcure and have been working at the Legally Mine offices on behalf of PROcure.

376. Dan and/or Lindsey have violated the Award by using Legally Mine resources to manage ProCure's website, namely by requiring Legally Mine Employee Jonathan Madsen to run and operate ProCure's website.

377. Dan and/or Lindsey, with Martin and Kathleen's assistance, allowed Legally Mine to make payments to, for, or on behalf of ProCure, by:

   a. Causing a payment of $30,000.00 to MATCHBACK to cover expenses accrued up to August 17, 2020.

   b. Using Legally Mine funds to cover Benjamin Dyches' salary to work on ProCure projects.

   c. Email communication, invoice, and audio recording clearly show Legally Mine's financial involvement in ProCure.

378. Dan and Lindsey have violated the Award by allowing Dan to continue to manage the Company.

379. Dan continues to sign (by his own admission) all Legally Mine checks through an electronic signature.

380. Lindsey serves as a personal puppet of Daniel when it comes to making decisions for the Company.

381. Lindsey and Dan required Samantha Bunker to switch Legally Mine from an LLC into a C-Corporation.

382. Lindsey and Dan stripped Ammon and Matt of their ability to view financial information for the Company, violating Utah Law and the order to maintain the staus quo.

383. In retaliation for their filing of an IRS whistleblower complaint, Dan and Lindsey terminated Ammon and Matt from their positions, violating the order to maintain the status quo.

384. Lindsey and Dan forcibly took over the Company servers, violating the order to maintain the status quo.

385. Dan and Lindsey have changed multiple service providers, business partners, etc., violating the order to maintain the status quo.

386. Dan and Lindsey, as evidenced by the information above, continue to show their incapability and unwillingness to follow the law and the Arbitrator's Final Award.

387. Dan continues to involve himself in the daily decisions of Legally Mine and transfers funds to entities that are not owned by Legally Mine.

388. Wherefore, Plaintiffs request

    a.  The immediate removal of Dan and Lindsey as employees of the company.

    b.  That Dan and Lindsey be permanently dissociated from the Company,

    c.  That Dan and Lindsey be jointly and severably liable for all damages they have caused, in an amount to be proven at trial,

    d.  Other damages and attorneys' fees as the Court deems just and proper.

**SIXTEENTH CLAIM FOR RELIEF**
**(Demand for Accounting for funds taken from PPP – Plaintiffs Ammon McNeff and Matthew McNeff as Against Dan, Martin, Kathleen, and Lindsey)**

389. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set

forth herein.

390. Defendant Dan throughout this whole litigation refused to allow an independent accounting.

391. Plaintiffs Ammon and Matthew are members of Legally Mine.

392. The Arbitrator required Plaintiffs read-only access to QuickBooks.

393. Defendants Dan, Martin, and Kathleen continue to withhold QuickBooks access to Plaintiffs.

394. Matthew has communicated with Martin and Kathleen to receive access to QuickBooks.

395. After many attempts from Matthew, Plaintiffs have been unsuccessful in receiving the read-only access to QuickBooks.

396. Without QuickBooks access, Plaintiffs are unable to determine the exact amount Defendant Dan has taken from the PPP loan.

397. By reason of the foregoing misconduct, Ammon and Matthew are entitled to an immediate, full, and accurate accounting of all PPP funds that Defendant Dan obtained or received from the Company.

398. Ammon and Matthew are further entitled to an award of damages in an amount to be established by such accounting.

399. As a result of Defendant Dan's intentional, willful, and unlawful use of company funds, Ammon and Matthew are also entitled to punitive damages in an amount that will be proven at trial.

400. Therefore, Plaintiffs request this Court to require an independent accountant to investigate the mishandling of the PPP funds.

## SEVENTEENTH CLAIM FOR RELIEF
### (Injunctive Relief – All Plaintiffs as Against Defendant Dan)

401.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

402.    By reason of the foregoing misconduct, monetary or other legal relief is insufficient to rectify the irreparable harm caused and which continues to be caused by Defendant Dan.

403.    In the absence of injunctive relief, a money judgment would not be able to effectively restore Plaintiffs to the benefit of their commercial and economic relations, goodwill, and reputation.

404.    The threat of continued injury to Plaintiffs outweighs any damage that injunctive relief may cause to the party restrained.

405.    Injunctive relief is not adverse to the public interest.

406.    There is a substantial likelihood that Plaintiffs will prevail on the merits of one or more of the underlying claims, and this case presents serious and substantial issues on the merits that should be the subject of further litigation and deliberate investigation.

407.    By reason of Defendant Dan's egregious misconduct, Plaintiffs are entitled to the immediate entry of a temporary restraining order, preliminary and/or permanent injunctive relief prohibiting Dan from engaging in any ongoing or further misconduct.

408.    Therefore, Plaintiffs request an injunction against Defendants from engaging in further illegal actions or violations of court orders, use of Company asses, prohibiting further financial improprieties,  and an Order prohibiting the destruction of Company goodwill or spoliation of evidence.

## PRAYER FOR RELIEF

49

WHEREFORE, Plaintiffs pray for a judgment against Defendant Dan McNeff as follows:

a.  For the judicial enforcement of Ammon McNeff to serve as manager of Legally Mine;

b.  For the judicial removal of Dan as a member of Legally Mine;

c.  For the return of all of funds, monies, reimbursements, and distributions to Legally Mine for which Defendant Dan took from the PPP loan and payment to unowned entities;

d.  For Dan to provide an immediate, full, and accurate accounting of all monies he obtained or received from the PPP loan, and the disposition of those monies;

e.  Ammon and Matt receive all financial records of the company;

f.  For punitive damages on all counts alleged herein in the amount of no less than three times Plaintiffs' actual damages, or as otherwise allowed by law, due to Defendant Dan's willful, malicious, and unlawful conduct, and conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs;

g.  For attorneys' fees, litigation expenses, and costs of suit as allowed under the law and/or by the applicable agreements;

h.  For preliminary or permanent equitable relief, as may be necessary;

i.  For the judicial removal of Dan as a member of Legally Mine;

j.  For Lindsey Thompson to be removed as President of Legally Mine; and

k.  For such other and further relief as the Court deems just and appropriate.

Plaintiffs demand a jury on all triable issues.

DATED January 20, 2021

**SUMSION BUSINESS LAW**


*/s/ Cameron S. Christensen*
Cameron S. Christensen
Steven R. Sumsion
*Attorneys for Plaintiffs*