# EXHIBIT A

| | |
|---|---|
| **AMMON MCNEFF**, an individual; <br> **MATTHEW MCNEFF**, an individual, <br>     Claimants, <br><br> vs. <br><br> **DANIEL MCNEFF**, an individual, <br>     Respondent. | **FINAL DECISION AND AWARD** <br><br> ARBITRATOR:  Mark F. James |

The Arbitrator was appointed by mutual agreement among the Parties to address the disputes presented to the Arbitrator by the Parties, including those presented by motion during the course of these proceeding as well as those set forth in Claimants' Arbitration Complaint.  Before accepting the appointment, the Arbitrator confirmed that he had no conflicts with counsel or the Parties.  While the Arbitrator has a professional relationship with counsel for both of the parties, that relationship is no different than would be common for most lawyers in this community.  To the best of his knowledge, the Arbitrator had not met any of the Parties before this dispute.  The Arbitrator reaffirms that he has acted impartially and without any conflicts of interest

This Final Decision and Award ("Award") will begin where awards typically end.  Having presided over a six-day hearing, listened to and observed multiple witnesses, heard and considered multiple arguments from counsel, and having considered and ruled upon multiple motions presented by both sides during the course of this Arbitration, in addition to having had many email and telephonic communications with counsel for the Parties, Claimant Ammon McNeff

("Ammon"), Matthew McNeff ("Matthew"), and Respondent Daniel McNeff ("Dan"),[1] during the course of this Arbitration, the Arbitrator expresses appreciation to the respective attorneys for their professionalism and excellent work product. The record in this matter is considerable, with numerous issues being hotly contested, briefed and argued. Not unlike many hard-fought sporting events, one abhors that there must be a "loser." Owing to the powers granted to this Arbitrator pursuant to agreement between the Parties, the statutes of the State of Utah, and the AAA Commercial Arbitration Rules (which were adopted at least to some degree in this case), and the generally accepted legal and equitable authority of an arbitrator in the State of Utah, there is no loser in this matter. But also, there is no winner in this matter. To the contrary, there are winners and losers of certain issues. This Award seeks to resolve this matter for the Parties and hopefully prevent future litigation.

The Parties have had multiple opportunities to independently work out their differences – to no avail. How many noses must be cut off; how many faces spited? What is the price of victory? What are the consequences of loss? This arbitration proceeding presents many difficult questions, numerous of which are outside the purview of the Arbitrator. Because the parties failed to find sufficient common ground to resolve their differences, it falls upon the Arbitrator to compel an outcome with respect to the issues presented. This is an awesome responsibility which has been undertaken – not lightly – by this single Arbitrator. It is a high calling that has required significant undertaking in an effort to craft just, fair, legally correct, and equitable resolutions to the many issues presented within the scope of this arbitration.

---

[1] Legally Mine, LLC is referred to herein as "Legally Mine."

Several general categories of issues were presented in the context of this Arbitration for resolution, many of which were generally set forth in Claimants' Arbitration complaint. Those categories are not necessarily "clean" or "discrete" vis-a-viz one or more of the other categories; a particular category of issues may overlap to some degree with other categories. A particular category also may implicate other or additional issues. By way of example only, argument has been presented that the balance of the owners' capital accounts or owners' equity balances (hereafter "equity accounts") of the three owners of Legally Mine (one of the categories at issue), at any given time, also dictates or reflects the percentage ownership interest in Legally Mine of the respective owners of the company. The Arbitrator considered those various categories and issues in reaching a decision in this matter.

The Arbitrator has carefully considered the evidence, including pleadings, testimony, exhibits, briefing, applicable case law and statutes, and argument of counsel. Based upon all of the foregoing, the Arbitrator hereby provides the parties with the following decision, which comprises this Award.

Having considered the briefing and exhibits submitted, the testimony presented, and the arguments made; having considered the input from the Special Master in this matter; and having assessed the credibility of witnesses, including in the context of competing and/or seemingly irreconcilable testimony between or among witnesses, the Arbitrator

HEREBY FINDS, CONCLUDES AND ORDERS as follows:

1. Effective as of the date of this Award, all claims and/or demands of any kind or character, causes of action, requests for declaratory or injunctive relief, motions and any other pending matters herein are specifically OVERRULED, VACATED and DENIED except as

otherwise set forth in this Award.  Notwithstanding the foregoing, the Arbitrator's Order sealing the Arbitration hearing remains in full force and effect.

2.      Insufficient evidence was presented to support a finding of unlawful or improper retaliation by Respondent against former Legally Mine employees.

3.      Taking into consideration the evidence presented with respect to equity accounts, including with respect to credit card charges, commingling of funds, payment of commissions, distributions, arguments regarding imposition of penalties and interest, the value of the contribution of Legally Mine from a sole proprietorship to a partnership entity, and payment to date of attorney and/or arbitration-related fees, the equity account balances of Daniel McNeff, Matthew McNeff and Ammon McNeff are, as of the date of this Award, restated as follows:

| | |
|---|---|
| Daniel McNeff: | $2,400,422 |
| Ammon McNeff | $ 461,468 |
| Matthew McNeff: | $ 291,495 |
| Total: | $3,153,385[2] |

4.      Ownership in the entities RHM, LTD ("RHM") and PROcure, LLC ("PROcure") is not vested in Legally Mine.  All prior payments made by Legally Mine to or on behalf of those entities have been taken into consideration in the adjustments to equity accounts stated above. Unless Legally Mine acquires a legal interest in RHM or PROcure in the future, and absent

---

[2] The foregoing amounts take into consideration repayment of all loans to Dan through the date of this Award.  They do not, however, take into consideration use of PPP funds received by Legally Mine, if any, to the extent such funds were paid to Dan other than for repayment of loans owed Dan as of the date of this Award.

unanimous consent of Legally Mine's owners, Dan is hereby permanently enjoined from causing or allowing Legally Mine to make payments to, for the benefit of, or on behalf of those entities.

5. Equity account percentages do not equate to ownership percentages in Legally Mine. It is the ruling of the Arbitrator that Legally Mine is owned 79% by Daniel McNeff;[3] 11% by Ammon McNeff; and 10% by Matthew McNeff. Legally Mine distributions made after the date of this Award shall be made on a pro rata basis (79/11/10), after the equity accounts have been adjusted through distributions to reflect these percentage balances.

6. Following this Award, Daniel McNeff shall be entitled to receive commissions earned by him in a manner (both as to how commissions are earned and calculated and when they are paid) consistent with how commissions are earned, paid, and calculated with respect to other Executive Directors within Legally Mine.

7. Although the Arbitrator has determined not to remove Daniel McNeff as a member of Legally Mine, Daniel McNeff is hereby expelled as manager of Legally Mine effective immediately. Daniel McNeff further is permanently enjoined from serving as Legally Mine's manager (as the term "manager" is defined in the existing Legally Mine Operating Agreement). Henceforth, and unless changed by unanimous consent of the owners of Legally Mine, Legally Mine shall continue to have one manager. The manager of Legally Mine shall be selected by the unanimous vote of Daniel, Ammon and Matthew. The requirement of the Operating Agreement that a manager also be a member of Legally Mine is removed. If

---

[3] This ruling is not intended to and does not implicate any ownership interests in Legally Mine as between Daniel McNeff and his wife in the context of their divorce proceedings.

unanimous vote cannot be achieved, any two of the current three owners of Legally Mine, on the one hand, and the other owner, on the other hand, each shall select an individual who, together and by unanimous vote between the two, then shall select the manager of Legally Mine. In the event a manager cannot be selected based on either of the foregoing selection procedures, at the request of Daniel, Ammon and/or Matthew, a judge sitting in the Fourth Judicial District Court of Utah County, Utah, shall select the manager of Legally Mine.

8.      All outstanding loans owed by Legally Mine to Daniel, Matthew, and/or to Ammon are deemed fully satisfied, resolved, and paid as of the date of this Award.

9.      The Arbitrator finds that Respondent Daniel McNeff gave certain testimony at the Arbitration hearing that Respondent knew or should have known was not truthful. The Arbitrator also finds that Respondent, in violation of the Arbitrator's order, failed to give Claimants' prompt read-only access to Legally Mine's bank account opened at Alta Bank. As a sanction to Respondent, Claimants are awarded their costs and attorneys' fees reasonably incurred in connection with this matter. The Arbitrator also finds that Claimants overall are the substantially prevailing party for purposes of an award of attorney fees, although Claimants did not prevail on certain claims and issues. The Arbitrator orders that Claimants' costs (including payments made by Claimants for their share of Arbitrator fees) and attorney fees incurred in connection with this matter be paid by Legally Mine rather than by Respondent. Based on the evidence presented at the trial of this matter, Claimants previously caused Legally Mine to pay Fifty-Nine Thousand Five Hundred and no/100 dollars ($59,500.00) of Claimants' attorneys' fees, Arbitrator fees and costs in connection with this matter. Remaining attorneys' fees, Arbitrator fees and costs claimed by Claimants shall be established by sworn declaration or

affidavit from Claimants submitted to the Arbitrator. Respondent shall have the opportunity to object to any portion of the fees or costs Respondent believes is inappropriate or excessive, and, if necessary, the Arbitrator shall conduct a hearing to determine the total amount of fees and costs awardable. The Arbitrator does not request or desire expert testimony from either side with respect to attorneys' fees and/or costs at this time. Claimants' should submit their fee/cost requests within 15 days from the date of this Award and Respondent's response thereto, if any, should be submitted within 10 days following Claimants' submission. These deadlines may be altered as the Parties see fit by mutual agreement of the parties.

10. The current version of Legally Mine's Operating Agreement as well as Legally Mine's books, records and scheduled shall be deemed amended, to the extent necessary, in order to be consistent with this Award.

DATED this 6th day of July, 2020.

/s/ *Mark F. James*

Mark F. James, Arbitrator

# CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **FINAL DECISION AND AWARD** to be emailed this 6th day of July, 2020, to the following:

Steve Sumsion (steve@businesslawutah.com)
Cameron Christensen (cameron@businesslawutah.com)
Tom Seiler (tws@safmlaw.com)
Perris Nelson (pnelson@safmlaw.com)

<u>Mark F. James</u>
Arbitrator